## Piper's Estate.

*Decedent's estate—Distribution—Executors and administrators—Refunding bonds.*

Distribution by the orphans' court of a balance shown by the account of an executor or administrator is a quasi proceeding in rem, binding upon the whole world, and especially binding those who are actually parties or but for their own act or laches might have been parties.

Where distribution is awarded to a legatee or distributee or where the court approves a previous distribution made voluntarily, the executor or administrator has no right to demand a refunding bond, and as a necessary consequence cannot be made liable for not having done so.

*Mortgage—Presumption—Decedent's estates—Distribution.*

Where land is conveyed under and subject to a mortgage created by the grantor, and for more than thirty years after the mortgage became due and until after the death of the obligor in the bond accompanying the

mortgage, interest is paid by the obligor and his successors in title to the land, and the executors of the obligor voluntarily pay legacies, without taking refunding bonds, and no claim is made on the bond at the audit of the executor's account, the mortgagees cannot subsequently claim either from the executors or the legatees, a deficiency resulting from a sheriff's sale of the land for less than the amount of the mortgage.

Argued March 22, 1904. Appeal, No. 287, Jan. T., 1903, by the Fire Association of Philadelphia, from decree of O. C. Phila. Co., July T., 1897, No. 301, dismissing petition for citation in estate of Wm. A. Piper, deceased. Before DEAN, FELL, BROWN, MESTREZAT and THOMPSON, JJ. Affirmed.

Petition for citation.

From the record it appeared that Wm. A. Piper on June 11, 1869, executed to the Fire Association of Philadelphia his bond and mortgage for $7,000 for one year. The property covered by the mortgage was sold by William A. Piper in 1893, to Alexander H. McAdam, and by the executors of his will was conveyed to Theodore H. Conderman, the vice president of the Fire Association of Philadelphia, appellant herein, in 1900. Conderman having made default suit was brought to foreclose the mortgage in August, 1900, and no notice having been given to appellees, either of the default or of the suit, judgment was taken against Wm. A. Piper on two returns of nihil habet. No claim was made by appellant against appellees until after November 1, 1900. William A. Piper died July 6, 1896, having first made a will of which the appellees were appointed executors. The account of the executors was filed on August 25, 1897; was audited by the orphans' court on October 8, 1897, Judge ASHMAN filing his adjudication thereon on October 22, 1897. To this adjudication exceptions were filed to the allowance of the claim for direct inheritance tax on the legacies. These exceptions were sustained, and order and decree entered " that the legacies mentioned in adjudication be awarded without deduction for direct inheritance tax." On March 30, 1901, the Fire Association filed a petition for a citation to file an account for the purpose of having legacies paid to the legatees, applied to the payment of the deficiency resulting from a sale of the mortgaged premises for less than the amount of the mortgage.

PENROSE, J., filed the following opinion:

Distribution by the orphans' court of a balance shown by the account of an executor or administrator is a quasi proceeding in rem, binding upon the whole world, and especially binding those who are actually parties or, but for their own act or laches, might have been. The Act of April 13, 1840, P. L. 319, provides that distribution may be upon the application of any legatee, heir, or other person interested; and at the hearing, each legatee, heir or creditor has the right to contest the claim of the others, Kittera's Estate, 17 Pa. 416, and to deny his right to participate. The decree, like the decree of any other court, not only concludes all parties, but it cannot be impeached collaterally; and hence, where, in such proceeding, distribution is awarded to a legatee or distributee, or where the court approves a previous distribution, made voluntarily, Charlton's Appeal, 88 Pa. 476; Gormley's Estate, 154 Pa. 378, the executor or administrator has no right to demand a refunding bond, and, as a necessary consequence, cannot be made liable for not having done so: Pierson's Estate, 5 Pa. Dist. Rep. 424; Ferguson v. Yard, 164 Pa. 586, etc. Creditors who do not choose to come into the orphans' court have the right to stay out. They may, if they prefer, sue in another forum; but if they do they lose all claim to the fund distributed, and cannot be heard to complain that the rights which they failed to assert were not protected or provided for : Hammett's Appeal, 83 Pa. 392. Volenti non fit injuria.

Of course, where the account is filed before the expiration of the time given to creditors to present their claims, its adjudication, within that period, as in Simpson's Appeal, 109 Pa. 383, Robin's Estate, 180 Pa. 630, and Rastaetter's Estate, 15 Pa. Superior Ct. 549, will not protect the executor or administrator who does not require refunding bonds; and so as in Jones's Appeal, 99 Pa. 124, where an account blending distribution and administration is simply confirmed without affirmative action by the court with regard to the distributive payments ; in the former case, the award of distribution is in plain disregard of the right given to creditors by the act of assembly, and in the latter, creditors have not had the opportunity to be heard which is afforded where the account comes regularly before the court for distribution as well as confirmation.

It is clear in the present case that the petitioner cannot claim against the executors, whose distribution, without refunding bonds, was under a decree which might have been enforced by attachment. It is a maxim of the law that whatever a man may be compelled to do, he may do voluntarily.

It is no less clear that there is no right to demand restitution from the legatees or distributees in whose favor the decree was made. If it should be conceded, for the sake of argument, that the court erred in not making the distribution conditioned upon the giving of refunding bonds, the error was one that could only be corrected by appeal, or by review at the instance of one who was not chargeable with laches. Even where a legatee has received a voluntary payment from the executor—as decided in Montgomery's Appeal, 92 Pa. 202; Miller v. Hulme, 126 Pa. 277, and Blake v. Metzgar, 150 Pa. 291—he may, where there is nothing unconscionable in his so doing, retain it: a fortiori, where it has been determined by decree of court that the payment was proper, and that it should be made.

Here the petitioner bases its claim for relief upon a bond which accompanied a mortgage given to it by the decedent June 11, 1869—twenty-seven years before his death. After this lapse of time, there would, ordinarily, be a presumption of payment; but if such presumption has been rebutted by the conveyance of the mortgaged property, in June, 1893, " under and subject to " the mortgage, it was clearly the duty of the creditor, if not satisfied with the security of the mortgage, and claim upon the personal estate of the mortgagor, under the bond, was contemplated, to give prompt notice to the executors, and, still more, to present such claim when their account was before the court. If this had been done, the legatees, if their defense of lapse of time, estoppel, etc., had failed, would either have been subrogated to the right of the creditor upon the mortgage, or proceedings would have been suspended until the amount required from personal estate to make good the deficiency of the real estate had been ascertained by suit on the mortgage and sale of the land: Saffin's Estate, 12 Pa. Dist. Rep. 99; and in the latter case they would have had the opportunity of attending the sale and preventing a sacrifice—an opportunity which they have been deprived of by

reason of the judgments having been obtained upon two returns of nihil, though, it would seem, the mortgagee knew that the mortgagor was dead, but gave no notice to the executors. Had claim been so made, neither the legatees nor the executors would have been misled by the silence of the creditor.

The position of the latter is not made any better by the fact that payment of interest on the mortgage continued to be made regularly by the terre-tenant until nearly three years after the account of the executors had been adjudicated. The principal of the debt had become due many years before; and the failure to give notice that the personal estate of the mortgagor was looked to for payment or to present the claim to the auditing judge, indicated, as strongly as actions could indicate, that the idea of such claim was not entertained, and that the creditor was satisfied with the security of the mortgage.

It is a fact in the case, though it does not, perhaps, affect its legal aspect, that the default in the payment of interest, as above, appears to have taken place after the purchase of the mortgaged premises, from the executors of the original vendee of the decedent, " under and subject to " the payment of the mortgage, by one, who, it is asserted without contradiction, held the position of vice president of the petitioning company, and who, as between himself and his immediate vendor and the decedent, the original vendor, had become the principal debtor, by reason of the covenant implied by purchasing " under and subject to " the payment of the debt: Blood v. Crew-Levick Co., 171 Pa. 328.

The policy of the law is against keeping open the administration of the estate of a decedent, and continuing, indefinitely, a liability upon his personal obligations. Hence, it was held in Quain's Appeal, 22 Pa. 510, followed by Williams's Appeal, 47 Pa. 283, that the covenant of one who had purchased land upon ground rent could only be enforced for rent falling due after his death, as against the land. It is not easy to see the distinction between the personal liability of a mortgagor, on the bond accompanying the mortgage, after he has sold the land subject to the mortgage, and after his death, and that of a purchaser on ground rent on his covenant to pay. Theoretically, the bond is the principal debt and the mortgage the collateral, but in general the reverse is the real relation; and after the

lapse of many years, during all of which the creditor has received his interest from the successive purchasers of the mortgaged property, with no suggestion of claim for the principal, though long overdue, from the original debtor on his bond, it may well be presumed that personal liability has been released or discharged.   A presumption of payment arises after twenty years, and in the present case there have been more than thirty.

The petition is dismissed at the costs of the petitioner.

*Error assigned* was the decree of the court.

*Albert L. Moise,* of *Sharp, Alleman & Moise,* with him *Samuel Dreher Matlack,* for appellants.

*H. S. Prentiss Nichols* and *William H. Staake,* for appellees, were not heard.

PER CURIAM, April 11, 1904:
This decree is affirmed on the opinion of the court below, as filed by Judge PENROSE.